**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WAHEED ERVIN, individually, and on behalf of others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>JERNBERG INDUSTRIES, LLC and AMERICAN AXLE & MANUFACTURING, INC., )<br><br>Defendants. ) | Case No. _____<br><br>Removal from the Circuit Court of Cook County, Illinois<br><br>Case No.: 2020CH05318 |

<u>**NOTICE OF REMOVAL**</u>

Pursuant to 28 U.S.C. §§1331, 1332, 1367, 1441 and 1446, Defendants JERNBERG INDUSTRIES, LLC ("Jernberg") and AMERICAN AXLE & MANUFACTURING, INC. ("American Axle") (collectively, "Defendants"), remove to the United States District Court for the Northern District of Illinois, Eastern Division, the civil action pending against it in the Circuit Court of Cook County, Illinois, Chancery Division[1].  In support of removal, Defendants state as follows:

1.     Plaintiff Waheed Ervin ("Plaintiff" or "Ervin") filed a three-count Class Action Complaint ("Complaint") alleging violations of the Biometric Information Privacy Act ("BIPA") in the Circuit Court of Cook County, Illinois on August 10, 2020.  The lawsuit is styled *Waheen Ervin, individually, and on behalf of all others similarly situated v. Jernberg Industries, LLC and American Axle & Manufacturing, Inc.*, Case No. 2020 CH 05318 (the "State Court Action").

2.     Pursuant to 28 U.S.C. §1446(a), a "copy of all process, pleadings, and orders served upon … defendants" in the State Court Action is attached hereto as **Exhibit A**.

---

[1] Given that this Notice of Removal is filed by both Jernberg and American Axle, all Defendants consent to the removal of this action.

3.  Jernberg was served with the Summons and Complaint on August 19, 2020.  *See* Ex. A.  American Axle was served with the Summons and Complaint on August 24, 2020.  *Id*.

4.  This Notice of Removal is filed within 30 days of the date that Jernberg was served and is accordingly timely.  28 U.S.C. §1446(b)(1); *see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (recognizing that the notice of removal clock does not run until a party has been served with the summons and complaint under applicable state law).

## VENUE IS PROPER

5.  The Circuit Court of Cook County, Illinois, is located within the United States District Court for the Northern District of Illinois, Eastern Division.  28 U.S.C. §93(a)(1). Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. §1441(a).

## SECTION 301 PREEMPTION CONFERS FEDERAL QUESTION JURISDICTION ON THIS COURT

6.  Plaintiff's BIPA claims are completely preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, and therefore arise under federal law conferring federal question jurisdiction on this Court.  *See Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust Fund of So. Cal.*, 463 U.S. 1, 24 (1983); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); 28 U.S.C. §1331.

7.  "Section 301 preempts claims directly founded on or 'substantially dependent on analysis of a collective-bargaining agreement.'"  *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 498 (7th Cir. 1996).  "If the resolution of a state law claim depends on the meaning of, or requires the interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute."  *Id*. at 499. "In sum, if it is necessary to interpret express or implied terms of a CBA, a state law claim is

completely preempted by § 301, the claim is deemed federal in nature from its inception, and the complaint is deemed one that defendant can remove." *Id*.

8.     In *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 904 (7th Cir. 2019), the Seventh Circuit consolidated two appeals that contended United Airlines and Southwest Airlines violated BIPA. The Seventh Circuit affirmed the lower court decisions that the plaintiffs' BIPA claims were preempted by the Railway Labor Act ("RLA") and unequivocally concluded that the claims "are topics for resolution by an adjustment board rather than a judge" and "the board must make that decision and supply any appropriate remedy." Although *Miller* applied the RLA, the U.S. Supreme Court has held that the preemption standard is essentially the same under the LMRA. *See Hawaiian Airlines v. Norris*, 512 U.S. 246, 260 (1994).

9.     Under nearly identical circumstances as this case, several district courts have applied *Miller* in holding that BIPA claims are federally preempted by Section 301 of the LMRA. *Peatry v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202, *3-4 (N.D. Ill. Feb. 26, 2020), dismissed plaintiff's BIPA claims as preempted by Section 301 of the LMRA because plaintiff should have raised these allegations through the grievance and arbitration provision of the CBA governing her terms of employment. *Gray v. The University of Chicago Medical Ctr., Inc.*, 2020 WL 1445608, *4 (N.D. Ill. Mar. 25, 2020), also dismissed plaintiff's BIPA claims because they "require interpretation of the CBA – at the very least its management rights clause." Specifically, *Gray* held that "[p]laintiff's claims under BIPA are preempted by Section 301 of the LMRA and must be dismissed" because plaintiff did not "exhaust [her] administrative remedies before bringing suit." *Gray* at *4-5. *Fernandez v. Kerry, Inc.*, 2020 WL 1820521, *5 (N.D. Ill. April 10, 2020), cited to *Miller* in finding that "plaintiffs' BIPA claim is preempted by §301 of the LMRA." Likewise, *Crooms v. Southwest Airlines Co.*, 2020 WL 2404878, *3-7 (N.D. Ill. May 12, 2020),

3

reaffirmed *Miller* in holding that plaintiffs' BIPA claims are preempted by the analogous RLA because the question of consent by the union is for the adjustment board.

10.      According to records maintained by Jernberg, Plaintiff was a member of United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW" or the "Union") throughout his employment with Jernberg and throughout his tenure was covered by a collective bargaining agreement ("CBA") between the Union and Jernberg.  (*See* **Exhibit B**, Declaration of Linda Jarbo ("Jarbo Decl.") ¶¶8, 10, 13.)

11.      At all times relevant to the Complaint, the Union was the "sole and exclusive collective bargaining agency" for Plaintiff for purposes of collective bargaining with Jernberg. (Ex. B, Decl. ¶10, citing Exhibit 1, Article II, Section 1.)

12.      The CBA expressly recognizes Jernberg's management rights by providing:

> **Section 1.** Subject to the provisions of this Agreement, the management of the works and the direction of the working forces, including the right to hire, suspend or discharge for just cause and the right to relieve employees from duty because of lack of work, or other legitimate reasons, are vested in the Company, provided, however, that this will not be used for purposes of discrimination against any employee because of his Union activities.

> **Section 2.** The type of products to be manufactured, the location of the plants, the schedules of production, the methods of processes, means of manufacturing, and free access to its properties, at all times, are Management's prerogative. …

(Ex. B, Jarbo Decl. ¶11, citing Exhibit 1, Article V – Management.)

13.      The analysis of whether Jernberg satisfied BIPA's policy, notice and consent requirements necessitates interpretation of the CBA's language concerning Jernberg's right to manage and direct its workforce, determine policies and procedures and to determine the methods and means by which its operations are to be carried out.  Specifically, the analysis requires a determination of whether the CBA's specification of Jernberg's rights to manage and direct its

workforce and determine the methods and means by which its operations are carried out constitute a sufficient written notice and release from plaintiff's "legally authorized representative" under BIPA. 740 ILCS 14/15(b)(3).

14.     Like the CBAs in *Miller*, *Peatry*, *Gray*, *Fernandez* and *Crooms,* the CBA at issue here contains a broad management rights clause and establishes a grievance procedure that culminates in arbitration before an "umpire"/arbitrator selected either by agreement or by striking arbitrators from a list provided by the Federal Mediation and Conciliation Service. (Ex. B, Jarbo Decl. ¶12, citing Exhibit 1, Article XIII, Section 1.)

15.     The "Seventh Circuit has concluded that it is not possible to resolve a BIPA dispute over fingerprint timeclocks without reference to the collective bargaining agreement." Because Ervin's BIPA claim "necessarily requires interpretation of the collective bargaining agreement," it is preempted by §301 of the LMRA. This Court has original jurisdiction over the claim, and the case is removable. *See Fernandez,* 2020 WL 1820521 (denying plaintiffs' motion to remand); *see also Atchley*, 101 F.3d at 498-99.

### ALL REQUIREMENTS FOR CAFA JURISDICTION ARE MET

16.     A "class action" under CAFA includes "any civil action" that is removed to a district court of the United States that was originally filed under a "State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §1332(d)(1)(B). Here, the Complaint alleges BIPA claims on behalf of a putative class of "All individuals working for any Defendant in the State of Illinois who had their handprints collected, captured, received, obtained, maintained, stored or disclosed by any Defendant during the applicable statutory period." (Ex. A, Compl. ¶55.) Therefore, this action is properly considered a "class action" under CAFA.

17.     CAFA's minimal diversity requirement is also met.  28 U.S.C. §1332(d)(2). Plaintiff is a citizen of Illinois.  (Ex. A, Compl. ¶13.)  Defendants are citizens of Illinois, Michigan, and Delaware.  (Ex. B, Jarbo Decl. ¶¶4-5.)

18.     A limited liability company ("LLC") is a citizen of any state in which an LLC member is a citizen.  *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998).  Jernberg is a Delaware LLC whose principal place of business is in Illinois.  Its sole member is a citizen of Delaware.  (Ex. B, Jarbo Decl. ¶4.)

19.     American Axle is incorporated in Delaware with its headquarters and principal place of business located in Detroit, Michigan.  (Ex. B, Jarbo Decl. ¶5.)  *See Graff v. Leslie Hindman Auctioneers, Inc.*, 299 F.Supp.3d 928, 933 n.2 (N.D. Ill. 2017) ("… 'a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and the State . . . where it has its principal place of business.'") (citing 28 U.S.C. §1332(c)(1)).

20.     The "matter in controversy" aggregated across the claims of the purported class members also satisfies CAFA.  28 U.S.C. §1332(d)(6).  Plaintiff alleges that he was employed from June of 2013 to May of 2016.  (Ex. A, Compl. ¶42.)  He further alleges that during his employment, he "was required to scan his handprint each time he clocked in for work and clocked out" and that "all of [Defendants'] hourly workers" did the same.  (*Id.* ¶¶33, 45.)  Since Plaintiff seeks $1,000 to $5,000 in statutory damages for each alleged violation of BIPA, it is plausible that he seeks to recover that amount each time he used the handprint scanner while employed.

21.     If we conservatively assume two scans per day x 20 days worked per month x 24 months x $1,000 per scan, Plaintiff's purported damages are $960,000.  *See Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766, 769 (N.D. Ill. 2019) (counting each scan as a separate violation only for purposes of determining whether the jurisdictional threshold is met because the

6

allegations suggested that a violation occurred every time the plaintiff and putative class members clocked in and out of work).

22.     The Complaint does not specify a damages figure or plead any amount sought.  It estimates that the putative class "exceeds fifty (50) individuals"  (Ex. A, Compl. ¶57.)  The Complaint further alleges, at a minimum, five BIPA violations per individual and seeks statutory damages of $5,000 per intentional or reckless violation, or statutory damages of $1,000 per negligent violation, in addition to attorneys' fees.  (Ex. A, Compl. ¶¶57, 72-74, 82-83, 85, 94-95, Prayer for Relief (C).); 740 ILCS 14/20.

23.     Jernberg has determined that it employed at least 300 "hourly employees" during the time period alleged in this lawsuit.  (Exhibit B, Jarbo Decl. ¶14.)  Thus, the "matter in controversy" aggregated across the putative class plausibly exceeds $5,000,000.  (Five violations per individual x $5,000 per violation x 300 individuals = $7,500,000.)

24.     The matter in controversy requirement is also met if Defendants apply the Complaint's hand scan theory of damages.  If we conservatively assume 14 days worked per individual x 300 individuals x two scans per day x $1,000 per scan, that is $8,400,000, which plainly exceeds the CAFA matter in controversy requirement.  (Ex. B, Jarbo Decl. ¶¶14.)

25.     Defendants deny the validity and merit of Plaintiff's BIPA claims.  But, for purposes of setting forth grounds for this Court's jurisdiction, the matter in controversy is satisfied under 28 U.S.C. §1332(d)(6).  For removal purposes, the question is not "what damages the plaintiff will recover, but only how much is *in controversy* between the parties."  *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017) (emphasis in original).

26.     Under CAFA, Defendants need only show that there is a "reasonable probability that the stakes exceed" $5 million. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th

Cir. 2005). The amount in controversy "is a pleading requirement, not a demand for proof." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011). *See also Back Doctors Ltd v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) ("The legal standard was established by the Supreme Court in *St. Paul Mercury [Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)]: unless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court").

### RESERVATION OF RIGHTS

27. Defendants' filing of this Notice of Removal is not intended, nor should be construed, as any type of express or implied admission and/or consent by Defendants of whether the court has personal jurisdiction over it. The filing of this Notice of Removal is not intended, nor should be construed, as any type of express or implied admission by Defendants of any fact, of the validity or merits of any of Plaintiff's claims and allegations, or of any liability, all of which Defendants hereby expressly deny, or as any type of express or implied waiver or limitation of any of Plaintiff's rights, claims, remedies, and defenses in connection with this action, all of which are hereby expressly reserved.

28. Pursuant to 28 U.S.C. §1446(d), Defendants will promptly give written notice of the filing of the Notice of Removal to Plaintiff and will file a copy of this Notice with the Clerk of the Circuit Court for Cook County, Illinois.

**WHEREFORE**, Defendants JERNBERG INDUSTRIES, LLC and AMERICAN AXLE & MANUFACTURING, INC., respectfully request that this litigation be removed from the Circuit Court

of Cook County, Illinois, to the United States District Court for the Northern District of Illinois,

Eastern Division.

Dated:     September 18, 2020                    Respectfully submitted,


                                          By:   /s/ Jennifer L. Colvin
                                                One of the Attorneys for Defendants,
                                                **JERNBERG INDUSTRIES, LLC and
                                                AMERICAN AXLE & MANUFACTURING,
                                                INC.**

Anne E. Larson (ARDC No. 6200481)
Jennifer L. Colvin (ARDC No. 6274731)
Cyle R. Catlett (ARDC No. 6325562)
**OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone:  312.558.1220
anne.larson@ogletree.com
jennifer.colvin@ogletree.com
cyle.catlett@ogletree.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on September 18, 2020, she filed the foregoing *Notice of Removal* electronically with the Clerk of Court using the ECF system, and served the *Notice of Removal* on the following via electronic mail:

James B. Zouras
Ryan F. Stephan
Megan E. Shannon
**STEPHAN ZOURAS, LLP**
100 North Riverside Plaza
Suite 2150
Chicago, Illinois 60606
*jzouras@stephanzouras.com*
*rstephan@stephanzouras.com*
*mshannon@stephanzouras.com*

*Attorneys for Plaintiff*


/s/ Jennifer L. Colvin
One of the Attorneys for Defendants
**JERNBERG INDUSTRIES, LLC and**
**AMERICAN AXLE & MANUFACTURING, INC.**

44269118.1